988 A.2d 1033

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Richard J. HAAS.

Misc. Docket AG No. 18 Sept.Term, 2009.

Court of Appeals of Maryland.

Feb. 17, 2010.

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Com'n of Maryland), for Petitioner.

Richard J. Haas, Bailey, CO, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BELL, Chief Judge.

The issue this case presents is whether reciprocal discipline should be imposed in this case or, as the respondent, Richard J. Haas, argues, a different and a more lenient sanction is warranted. On motion of the Committee on Professional Standards (the Committee), the respondent was suspended from the practice of law by order of the Appellate Division of

the Supreme Court, Third Judicial Department of New York, dated May 5, 1997, pending compliance [1] with that court's February 14, 1997 order directing him to appear before the Committee to be examined under oath and to produce records. *In re Haas,* 239 A.D.2d 658, 657 N.Y.S.2d 1014 (1997). Neither what precipitated the motion leading to the order nor the documents the Committee sought is reflected in the record.[2] In any event, the respondent subsequently filed, in April 2003, for reinstatement to the practice of law. His application was denied. *Matter of Haas,* 308 A.D.2d 656, 764 N.Y.S.2d 657 (2003). While the respondent's application to be reinstated to the practice of law was pending, the Committee filed petition of charges against the respondent. *Matter of Haas,* 3 A.D.3d 732, 770 N.Y.S.2d 663 (2004).

The charges grew out of the respondent's representation of a defendant in the appeal of his murder conviction. *Id.* As to that representation, the court found:

1. The court's order provided that the respondent be
   "suspended from practice, effective immediately and until further order of this court, pending his compliance with this court's order entered February 14, 1997,"
   and that,
   "for the period of suspension, respondent be ... commanded to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another; ... [be] forbidden to appear as attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority or to give to another an opinion as to the law or its application, or [of] any advice in relation thereto;"
   and that he
   "shall comply with the provisions of section 806.9 [22 NYCRR 806.9] of the rules of this Court regulating the conduct of suspended attorneys."
   Section 806.9 prescribes conduct that is prohibited after suspension and that which a suspended attorney must do insofar as notice to clients is concerned, requires filing proof of compliance and delineates required recordkeeping.

2. According to the respondent, the order was the result of inquiries made by some of the respondent's former clients when they were unable to contact him and some of the documents sought were escrow documents related to a civil judgment that the respondent had recovered for one of those clients.

"He neglected the matter in violation of the attorney disciplinary rules (*see* 22 NYCRR 1200.30[a][3]). Respondent accepted $15,000 as a retainer on the appeal but thereafter provided little or no legal services and converted the fee to his own use (*see* 22 NYCRR 1200.3[a][5][7]; 1200.46[a], [c][4])."

Noting the reimbursement of the client by the Lawyers' Fund for Client Protection, the respondent's having reimbursed to the Fund the sum of $600 and having confessed judgment to the Fund for the full amount, the court concluded, despite having heard the respondent's mitigation—the respondent suffered from end stage liver disease, which had "serious adverse effects on respondent personally and professionally" and required two successive liver transplants—that the respondent was "guilty of professional misconduct." *Id.* As the sanction for that misconduct, it ordered [3]:

"that respondent should be suspended from practice for a period of three years, nunc pro tunc to May 18, 1998, the date of a letter from respondent to petitioner in which he admitted the conversion. Upon any reapplication for reinstatement, respondent shall make the showing required by this Court's rules (see 22 NYCRR 806.12[b]), including the restitution ordered by this Court's decision which censured respondent in 1997 (*Matter of Haas*, 237 A.D.2d 729, 654 N.Y.S.2d 479), medical opinion addressing his current capacity to practice law, compliance with the attorney registration

---

**3.** The court's order, in its entirety, stated:

"Ordered that respondent is found guilty of professional misconduct as charged and specified in the petition; and it is further ordered that respondent is suspended from practice for a period of three years, effective May 18, 1998, and until further order of this Court; and it is further ordered that respondent is commanded to continue to desist and refrain from the practice of law in any form, either as principal or as agent, clerk, or employee of another; he is forbidden to appear as an attorney and counselor-at-law before any court, judge, justice, board, commission or other public authority or to give to another any opinion as to the law or its application or any advice in relation thereto; and it is further ordered that respondent shall comply with the provisions of this Court's rules regulating the conduct of suspended attorneys (*see* 22 NYCRR 806.9)."

requirements (*see* Judiciary Law § 468–a; 22 NYCRR part 118), and respondent's past and present status, if any, in the bar of any other state."

*Id.* at 732–33, 770 N.Y.S.2d at 663.

On two subsequent occasions, *see Matter of Haas,* 11 A.D.3d 877, 784 N.Y.S.2d 660 (2004); *Matter of Haas,* 55 A.D.3d 1216, 865 N.Y.S.2d 583 (2008), the respondent filed applications for reinstatement. On both occasions, the application was denied. The criteria for determining whether reinstatement to the practice of law may be ordered is prescribed by 22 NYCRR 806.12(b). It provides:

"(b) An application for reinstatement may be granted by this court only upon a showing by the applicant (1) by clear and convincing evidence that applicant has fully complied with the provisions of the order disbarring or suspending applicant, or striking applicant's name from the roll of attorneys, and that applicant possesses the character and general fitness to resume the practice of law and (2) that, subsequent to the entry of such order, applicant has taken and attained a passing score on the Multistate Professional Responsibility Examination described in section 520.9(a) of the Rules of the Court of Appeals for the Admission of Attorneys and Counselors at Law, the passing score thereon being that determined by the New York State Board of Law Examiners pursuant to section 520.9(c) of such rules. A copy of an application for reinstatement shall be served on the [C]ommittee on [P]rofessional [S]tandards and written notice thereof shall be provided by applicant to the Lawyers' Fund for Client Protection. The [C]ommittee shall inquire into the merits of, and may be heard in opposition to, the application. The application may be referred to the appropriate committee on character and fitness or to a judge or referee for a hearing and report to the court."

As to the first application, the court expressed its belief that "the respondent has not made the showing upon which an application for reinstatement may be granted," mentioning particularly the respondent's failure to reimburse either of his

clients, as required by the order suspending him, or fully to reimburse the Lawyers' Fund. The second application was referred to the Committee on Character and Fitness for investigation. Noting that Committee's unfavorable recommendation, supported by its expressed concerns about the respondent's debts, his practice intentions and his perceived lack of candor at the interview, the court denied the application, "conclud[ing] that respondent has not shown by clear and convincing evidence that he possesses the character and general fitness to resume the practice of law in this state."

Acting pursuant to Maryland Rule 16–773(b),[4] the Attorney Grievance Commission of Maryland (the petitioner), by Bar Counsel, filed a Petition For Disciplinary Or Remedial Action against Richard J. Haas. Referencing the disciplinary proceedings against the respondent, noting, in particular, his suspension from the practice of law, the conduct that resulted in the suspension, the unsuccessful attempts the respondent made to be reinstated and the reasons for the lack of success, the petitioner alleged that the respondent violated Rules 1.1, Competence;[5] 1.2, Scope of Representation and Allocation of Authority Between Client and Lawyer;[6] 1.3, Diligence;[7] 1.4,

---

**4.** Maryland Rule 16–773(b) provides:

"(b) Petition in Court of Appeals. Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753."

**5.** Rule 1.1 provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**6.** Rule 1.2, as pertinent, provides:

"(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the

representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

7. Pursuant to Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

8. Rule 1.4 provides:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decision regarding the representation."

9. Rule 1.5, as relevant, provides:

"(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer.

"(3) the fee customarily charged in the locality for similar legal services.

"(4) the amount involved and the results obtained.

"(5) the time limitations imposed by the client or by the circumstances.

"(6) the nature and length of the professional relationship with the client.

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and.

"(8) whether the fee is fixed or contingent."

10. Rule 1.15, as relevant, provides:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property

1.16, Declining or Terminating Representation;[11] Rule 8.4, Misconduct,[12] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. Attached to the Petition was a certified copy of the Order, dated January 15, 2004, by the Appellate Division of the Supreme Court, Third Judicial Department of New York, suspending the respondent for misconduct.

This Court, as Rule 16–773(c)[13] requires, issued a Show Cause Order commanding both the petitioner and the respondent to "show cause, in writing, based upon any of the grounds set forth in Maryland Rule 16–773(e) why reciprocal discipline shall not be ordered by this Court." The petitioner, reiterating and relying on the New York suspension Order and its

---

shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created."

**11.** Rule 1.16 provides, as pertinent:

\* \* \* \*

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

**12.** Rule 8.4 provided, as relevant: "It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \* \*

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice . . . ."

**13.** Maryland rule 16–773(c) provides:

"(c) Show cause order. When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed."

procedural history, urged the Court to impose reciprocal discipline. Acknowledging that this Court has held that Rule 16–773 "does not mandate that the same sanction must be imposed" in this State as was imposed in the originating State, requiring only that "this Court give[ ] great deference to the other jurisdiction's factual findings [and] examine the other jurisdiction's sanction and determine whether that sanction is consistent with our disciplinary precedent," *Attorney Grievance Comm'n v. Whitehead,* 390 Md. 663, 683, 890 A.2d 751, 763 (2006), it submits that the sanction New York imposed for the violations the respondent was found to have committed is consistent with this Court's disciplinary precedent, with the discipline that this Court would impose, and has imposed, for similar misconduct.

Not unexpectedly, the respondent takes a different view. His interest is in being cleared to practice law in Maryland at the earliest possible time. Agreeing that Maryland Rule 16–773 only permits, and does not mandate, reciprocal discipline, nevertheless, he recognizes that, to achieve that result, this Court must find that exceptional circumstances, as enumerated in Maryland Rule 16–773(e), exist that would support its rejection of the sanction imposed by the New York court. The respondent takes the position that, in this case, there are exceptional circumstances and they demonstrate either that the sanction for his misconduct is inconsistent with the sanction this Court would impose for the conduct sanctioned, or that the imposition of corresponding discipline would result in "grave injustice." Thus, he argued, both that "[t]he proceedings in New York denied Respondent the opportunity to fairly present his case" and that "[i]t would be a grave injustice for the Courts in Maryland to perpetuate the punishment of Respondent for a period that [is] longer than the suspension that was originally set out in New York."

As to the former, the respondent emphasized that "the procedure followed in New York all took place while Respondent was suffering from great adversity from the loss of all of the office records and equipment that would have enabled more effective responses to the requests for information" and

when "the decline into end stage liver failure and the debilitating effects of treatments with interferon combined with the mental deficits occasioned by encephalopathy made it nearly impossible to respond to the procedural demands that the State sought at that time." The respondent further complained that the court's decision to suspend him *nunc pro tunc* was made "without a hearing on the facts." [14] Another matter about which he expressed concern was the manner in which his reinstatement applications were handled. As to the latter, he complained that "[n]one of the decisions in New York set out clear standards for what Respondent must do [to be reinstated]" and that "[w]herever the Court or the rules in New York set out requirements for reinstatement Respondent has met them." He concluded:

> "If this Court would simply accept that the three year suspension imposed in New York has expired and allow the Respondent to retain his authority to practice in the State of Maryland a strong argument can be made that justice will have been served. Respondent prays that the Court will decline to impose reciprocal discipline on that basis."

▮ Rule 16–773, as we have seen, addresses reciprocal discipline and inactive status. Subsection (g) reflects the deference that is paid to factual findings or adjudications of another appropriate disciplinary authority. It provides:

> "Conclusive effect of adjudication. Except as provided in subsections (e)(1) and (e)(2) of this Rule,[15] a final adjudica-

---

**14.** It is worth noting that, while, to be sure, the court's *per curiam* opinion confirmed that there was no hearing, it having been determined by the court, from a review of the disciplinary petition and the respondent's response, that there were no factual disputes, *Matter of Haas*, 3 A.D.3d 732, 770 N.Y.S.2d 663 (2004), it also indicated that, contrary to the respondent's suggestion, the respondent "admitted the conversion" charged in a letter, the date of which was the starting point of the suspension.

**15.** The (e)(1) and (e)(2) exceptions relate to " 'notice' and 'opportunity to be heard.' " *See Attorney Grievance Comm'n v. Roberson*, 373 Md. 328, 344, 818 A.2d 1059, 1069 (2003). Maryland Rule 16–773(e)(1) requires compliance with due process, and Maryland Rule 16–773(e)(2) ensures against "infirmity of proof."

tion in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed."

In that regard, this Court's cases are clear, pursuant to Rule 16–773(g), we do not relitigate factual matters or a final adjudication by another appropriate tribunal in a disciplinary proceeding, *see Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 68, 710 A.2d 926, 926 (1998); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–222, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1989). We accept, in short, the factual findings and the adjudication as "conclusive evidence of [the] misconduct" found in those proceedings.

Nevertheless, and as indicated, this Court has held that Rule 16–773 does not require the imposition of reciprocal discipline; it merely permits it. *See Whitehead,* 390 Md. at 668, 890 A.2d at 754; *Attorney Grievance Comm'n v. Weiss,* 389 Md. 531, 886 A.2d 606 (2005). Indeed, subsection (e) of the Rule prescribes several exceptional circumstances and provides that, if any one of them is shown by clear and convincing evidence, reciprocal discipline shall not be imposed (ordered). It provides:

"(e) Exceptional circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

"(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the

Court, consistent with its duty, cannot accept as final the determination of misconduct;

"(3) the imposition of corresponding discipline would result in grave injustice;

"(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

"(5) the reason for inactive status no longer exists."

Thus, in reciprocal cases, there are two aspects: adjudication and sanction. "A final adjudication in a disciplinary proceeding by a judicial tribunal . . . that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule." *See* Maryland Rule 16–773(g). With the evidentiary foundation in place, the issue of the appropriateness of the sanction imposed must be addressed. Maryland Rule 16–773(c), which requires the Court to issue a show cause order upon the filing of the petition, is a mechanism within the Rule that permits either of the parties to the proceedings to show "why corresponding discipline or inactive status should not be imposed." In addition, the Rule prescribes the exceptional circumstances, which, if shown, will allow the party making the showing to avoid the reciprocal discipline.

■ The respondent does not contend generally that he is entitled to the benefit of the exceptions to the finality of factual findings or disciplinary adjudications. He does suggest, specifically, that we should not credit the factual findings of the New York court with regard to conversion and that, in effect, to do so, would amount to the "grave injustice," against which Rule 16–773(e)(3) cautions. In that regard, he avers:

"The Court, in declaring that the circumstances surrounding the payment of a retainer and the failure of Respondent to complete the representation amounted to a conversion of funds never afforded Respondent an opportunity to be heard on the issue of conversion. It would be unfair for the Court in Maryland to perpetuate this potentially unfair ruling by imposing discipline at this time."

We are not persuaded. The record reflects that the respondent filed an answer to the petition for discipline. The respondent correctly informs the Court that there was no hearing held on the petition, but that was because the court determined that the facts were not in dispute. 3 A.D.3d 732, 770 N.Y.S.2d 663. Moreover, the court found, on the basis of a letter, dated May 18, 1998, from the respondent, that the respondent admitted the conversion. The respondent's bald assertion, when it conflicts with the court's findings, hardly amounts to clear and convincing evidence of an exceptional circumstance.

The respondent also maintains that he is entitled to "substantially different discipline" in Maryland than that ordered by the New York court. It is not the nature of the misconduct on which he relies, however. Rather, the respondent's argument on this point relates to the nature of the proceedings and what he perceives to have been unfairness, bordering on a denial of due process. The respondent submits, for example:

"In 2003[,] Respondent[ ] decided to petition the Court for reinstatement without the consent of the committee on professional standards. In response to the Respondent's petition without their consent the Committee on Professional Standards filed [a] petition for discipline, which is the only petition for discipline under which any disciplinary order remains.

"The petition of the Committee on Professional Standards in 2003 related to a murder conviction that Respondent had undertaken to appeal back in 1995. The Committee declined to seek any discipline or other punishment with respect to this inquiry until the Respondent requested reinstatement without their permission.

"Although the Court summarily denied the then pending petition for reinstatement when it did rule on the brand-new petition it took into account the fact that the Respondent had fully responded to the petition many years earlier. Accordingly, the discipline under which the Respondent currently sits suspended was retroactive and expired in the

year 2001. The Respondent is no longer suspended under the rules of the state of New York but has not yet been reinstated."

Again, we are not persuaded. The respondent has misread or misinterpreted the New York order. While, by its terms, the order imposed a suspension for a definite period, three years from a specified date, it can not be read in isolation; it must be read in combination with the Rule of Court that it referenced: 22 NYCRR 806.12(b). That Rule prescribes, as a prerequisite to reinstatement, that the applicant show, "by clear and convincing evidence," *inter alia,* "that applicant possesses the character and general fitness to resume the practice of law." In other words, reinstatement to the practice is not automatic with the passage of time. Consequently, the respondent is just wrong when he says that his suspension has expired.

We will impose reciprocal discipline, no exceptional circumstance militating in favor of not doing so having been determined to exist.

■ The Maryland equivalent to a suspension subject to 22 NYCRR 806.12(b) is an indefinite suspension. *Attorney Grievance Comm'n v. Beatty,* 409 Md. 11, 15, 972 A.2d 840, 842 (2009); *See Attorney Grievance Comm'n v. Steinberg,* 385 Md. 696, 705 n. 10, 870 A.2d 603, 609 n. 10. (2005). Suspension as a sanction for attorney misconduct is authorized by Rule 16–759(c). A suspension can be for a definite term or period or indefinite. See Rule 16–760(g), which provides:

"(g) *Orders for suspension or inactive status.* (1) *Definite period.* An order of the Court of Appeals that suspends the respondent from the practice of law for a definite period of time may specify any conditions to be satisfied before or after the suspension expires.

"(2) *Indefinite suspension or inactive status.* An order of the Court of Appeals that suspends the respondent from the practice of law indefinitely, or places the respondent on inactive status, may permit the respondent to apply for reinstatement in accordance with Rule 16–781

not earlier than a specified period of time after the effective date of the order."

Rule 16–781 governs the reinstatement of a disbarred, suspended or inactive attorney. Section (a) requires the filing of an application, which must be processed, for which a fee is payable, section (b), served, section (c) and answered. Section (f). Section (g) of that Rule sets forth the "Criteria for reinstatement." It provides:

"The Court of Appeals shall consider the nature and circumstances of the petitioner's original conduct, the petitioner's subsequent conduct and reformation, the petitioner's current character, and the petitioner's current qualifications and competence to practice law. The Court may order reinstatement if the petitioner meets each of the following criteria or presents sufficient reasons why the petitioner should nonetheless be reinstated:

"(1) The petitioner has complied in all respects with the provisions of Rule 16–760 and with the terms and conditions of prior disciplinary or remedial orders.

"(2) The petitioner has not engaged or attempted or offered to engage in the unauthorized practice of law and has not engaged in any other professional misconduct during the period of suspension, disbarment, or inactive status.

"(3) If the petitioner was placed on inactive status, the incapacity or infirmity (including alcohol or drug abuse) does not now exist and is not reasonably likely to recur in the future.

"(4) If the petitioner was disbarred or suspended, the petitioner recognizes the wrongfulness and seriousness of the professional misconduct for which discipline was imposed.

"(5) The petitioner has not engaged in any other professional misconduct since the imposition of discipline.

"(6) The petitioner currently has the requisite honesty and integrity to practice law.

"(7) The petitioner has kept informed about recent developments in the law and is competent to practice law; and.

"(8) The petitioner has paid all sums previously assessed by the order of the Court of Appeals."

Under our Rules, all attorneys indefinitely suspended, whether open-ended or with permission to apply for reinstatement after a specified period of suspension, must apply for reinstatement in the manner prescribed and meet the criteria enumerated in Section (g).

Although it is not a reciprocal discipline case, *Steinberg* is instructive. There, Steinberg, who also was a member of the District of Columbia Bar, was found by that Bar's Board of Professional Responsibility to have engaged in misconduct, in the District of Columbia and in violation, *inter alia*, of two of that jurisdiction's Rules of Professional Conduct, that seriously interfered with the administration of justice and to have failed to respond reasonably to a lawful demand for information from Bar Counsel, a disciplinary authority. 385 Md. at 703, 870 A.2d at 607. As the sanction for that misconduct, the District of Columbia Court of Appeals suspended Steinberg from the practice of law for thirty days, but with reinstatement conditioned on proof of his fitness to practice law. 385 Md. at 700, 870 A.2d at 605. Subsequently, the Attorney Grievance Commission of Maryland directed Bar Counsel to file a petition for disciplinary or remedial action against him, charging that he violated the Maryland equivalent of those rules, Rule 8.4(d) and 8.1 of the Maryland Rules of Professional Conduct. The hearing court, to which the case was referred, concluded that Steinberg violated those Rules. Bar Counsel recommended that Steinberg be "suspended indefinitely from the practice of law." *Id.* at 701, 870 A.2d at 606. Steinberg, on the other hand, argued for a sixty day suspension, as had been recommended by the District of Columbia Board of Professional Responsibility to the District of Columbia Court of Appeals. *Id.* at 702–03, 870 A.2d at 607. He maintained that Bar Counsel's recommended sanction, indefinite suspension, was "greater than that received" in the District of Columbia. *Id.*

This Court adopted Bar Counsel's recommendation and indefinitely suspended Steinberg from the practice of law, conditioning his reinstatement to the Maryland bar on his reinstatement to the District of Columbia bar. 385 Md. at 705–06, 870 A.2d at 608–09. We explained:

"Both the [Bar Counsel] and [Steinberg] believe, apparently, that an indefinite suspension is a different, and more severe, sanction than that imposed by the District of Columbia. It is not. As indicated the Court of Appeals ordered [Steinberg] suspended for 30 days, but required a showing of fitness as a condition for reinstatement. Thus, [Steinberg] may be reinstated to the practice of law in the District of Columbia only by order of the court. We pointed out in *Attorney Griev. Comm'n v. Ruffin*, 369 Md. 238, 253, 798 A.2d 1139, 1148 (2002),

" 'Unlike an indefinite suspension, in Maryland, a suspension for a specified period does not trigger a reapplication process or require Court approval for reinstatement; all that is required is that the attorney certify compliance with the terms of the suspension and Bar Counsel confirms the certification and is satisfied of the truth of the certification. *See* Maryland 16–713.a.2.[16] "

*Id.* at 705 n. 10, 870 A.2d at 609 n. 10. We concluded: "In Maryland, therefore, an indefinite suspension ordinarily is the equivalent of any suspension, no matter the length, that requires a court order for reinstatement." *Id.*

In *Beatty*, a reciprocal discipline case, the respondent having pled guilty and been sentenced to a one-year term of unsupervised probation and assessed penalties and fines for fourth-degree stalking, 409 Md. at 13, 972 A.2d at 841, the

---

**16.** Former Maryland Rule 16–713.a.2 provided that upon expiration of a period of suspension, the attorney may practice law only after

"(a) the attorney files with the Bar Counsel a verified statement that the attorney has complied in all respects with the terms of the suspension and

"(b) Bar Counsel notifies the Clerk that the statement has been filed and Bar Counsel is satisfied that the attorney has complied with the terms of the suspension."

Supreme Court of New Jersey found that the respondent's conduct violated Rule 8.4(b)—criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer—of the State's Rules of Professional Conduct. As a result, it suspended the respondent from the practice of law for three months and "until the further Order of the Court." *Id.* at 12, 972 A.2d at 841. We were persuaded that, despite the fact that the suspension was for a specified period, the condition that it extended "until the further Order of the Court," rendered the order one for an indefinite suspension. Under that order, the respondent could be readmitted only after a several actions have taken place. First the respondent was required to file a Petition for Reinstatement that conformed to the Court Rule. *Id.* at 17, 972 A.2d at 843. Second, the Director of the Office of Attorney Ethics had to respond to respondent's petition. *Id.* Third, the Disciplinary Review Board had to submit findings and recommendations as to respondent's fitness to practice law. *Id.* Last, the State's Supreme Court must enter an Order of Reinstatement. *Id.* Until all of those steps were completed, the respondent remained suspended. Accordingly, this Court held that "because Respondent will not be readmitted to the Bar of New Jersey until that State's Supreme Court is persuaded that he is once again fit to practice law, an indefinite suspension [was] the appropriate reciprocal discipline." 409 Md. at 17, 972 A.2d at 843.

In its Order, the New York court provided that the respondent could be readmitted to practice upon court order only. Applying *Steinberg* and *Beatty* to the instant case, it is clear that, in Maryland, an indefinite suspension is the equivalent sanction to a suspension subject to 22 NYCRR 806.12(b). Consequently, the appropriate reciprocal sanction is an indefinite suspension. Furthermore, because the respondent may be reinstated to the practice of law in the state of New York only by order of that state's court, reinstatement to practice in this State will be conditioned on the respondent's reinstatement in New York.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RICHARD J. HAAS.*