*Attorney Grievance Commission v. Donald Saunders Litman*, Misc. Docket AG No. 81, September Term, 2013

**ATTORNEY GRIEVANCE – RECIPROCAL ACTION – EXCEPTIONAL CIRCUMSTANCES – CONDUCT WARRANTS SUBSTANTIALLY DIFFERENT DISCIPLINE**

An attorney, admitted in Maryland and Pennsylvania, was disciplined in Pennsylvania for failing to represent competently his client, misrepresenting intentionally facts and law to a tribunal, making frivolous contentions, and interfering with the administration of justice. Although the attorney was subject only to a public censure by the Supreme Court of Pennsylvania, his conduct warrants substantially different discipline in Maryland for his violation of MLRPC 1.1, 1.16(a)(1), 3.1, 3.3(a), and 8.4(a), (c) and (d).

**ATTORNEY GRIEVANCE – RECIPROCAL ACTION – PUBLIC CENSURE**

There is no Maryland sanction analogous exactly to Pennsylvania's sanction of public censure. Pennsylvania's public censure falls, in level of severity in Maryland's sanctions hierarchy, between a public reprimand and a suspension.

**ATTORNEY DISCIPLINE – INDEFINITE SUSPENSION**

Court of Appeals suspended indefinitely, with a right to apply for reinstatement no sooner than six months, the attorney who violated MLRPC 1.1, 1.16(a)(1), 3.1, 3.3, and 8.4(a), (c) and (d) by failing to represent competently his client, misrepresenting intentionally facts and law to a judicial tribunal, and making frivolous contentions, despite demonstrating certain mitigating factors.

Argued: 3 September 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 81

September Term, 2013

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DONALD SAUNDERS LITMAN

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Opinion by Harrell, J.

Filed: October 21, 2014

This reciprocal disciplinary action involves Donald Saunders Litman ("Litman" or "Respondent"), who was admitted to the Bar of this Court on 18 January 1985 and to the Bar of the Commonwealth of Pennsylvania in 1989. The Supreme Court of Pennsylvania censured publically Litman on 27 November 2012 for violating certain of Pennsylvania's professional conduct and disciplinary rules. Pursuant to Maryland Rules 16-751 and 16-773, the Attorney Grievance Commission of Maryland, through Bar Counsel, filed a Petition for Disciplinary or Remedial Action on 19 December 2013 against Litman based on his misconduct in Pennsylvania. Bar Counsel attached to its Petition a certified copy of the 12 July 2012 Order of the Pennsylvania Supreme Court, a transcript of the public censure, and the 6 March 2012 Report and Recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania.

This Court issued a Show Cause Order on 20 December 2013. Bar Counsel, in its response, argued that ordering corresponding discipline in Maryland would result in grave injustice and, rather, that Litman's misconduct warranted disbarment in Maryland. Litman, in response, requested that this Court not impose any discipline as to do so would result in grave injustice to him. He contended also that he was not afforded due process in the Pennsylvania disciplinary proceedings. We entertained the parties' oral arguments on 3 September 2014.

## I.     Facts

In reciprocal discipline cases, pursuant to Rule 16–773(g), the factual findings of the originating jurisdiction are treated ordinarily as conclusive evidence of an attorney's misconduct. *Atty. Griev. Comm'n v. Kourtesis*, 437 Md. 436, 445, 87 A.3d 1231, 1235

(2014). This does not preclude necessarily us from considering other evidence provided by the parties, id., but "we do not relitigate factual matters or a final adjudication by another appropriate tribunal in a disciplinary proceeding." *Atty. Griev. Comm'n v. Haas*, 412 Md. 536, 546, 988 A.2d 1033, 1039 (2010). As it turns out, the material facts of the present case are undisputed.[1]

The setting for what became Litman's misconduct began before Litman commenced his representation of his client in federal court in Pennsylvania. Hanoverian, Inc., a Delaware corporation, submitted the winning bid for a Pennsylvania landfill sold at auction pursuant to a U.S. Bankruptcy Court order. Hanoverian received a quitclaim deed from the Bankruptcy Trustee on 9 April 2004. Neither the Bankruptcy Court's order nor the quitclaim deed purported to transfer the solid waste permit, issued by the Pennsylvania Department of Environmental Protection ("DEP") to the previous owner, Quaker Alloy, Inc., needed to operate the landfill.[2] On 3 August 2004, Hanoverian purchased the corporate name "Quaker Alloy, Inc." from the Trustee, again pursuant to

---

[1] Litman argues that the Disciplinary Board of the Supreme Court of Pennsylvania did not afford him due process because it relied largely for the material facts of his misconduct on the opinion of Chief Judge Yvette Kane of the U.S. District Court for the Middle District of Pennsylvania, who did not entertain oral arguments or hold an evidentiary hearing before issuing FRCP 11 sanctions in the underlying litigation where the original misconduct arose that lead to the ethics charges. Litman stipulated before the Pennsylvania Disciplinary Board, however, to the facts recited in Chief Judge Kane's opinion. The Board relied on those facts to recommend a sanction to the Supreme Court of Pennsylvania. For those reasons, Litman's due process argument is without merit.

[2] According to the Supreme Court of Pennsylvania, an attempt to effect a transfer in this fashion would have violated the Pennsylvania Code, 25 Pa. Code § 287.221 (2008).

the approval of the Bankruptcy Court. Neither the Bankruptcy Court's order nor the sale documents provided for the transfer of any rights under the DEP permit.

Between April 2004 and April 2006 Hanoverian and the DEP were in communication about its assumption of operations at the landfill. Hanoverian's President and CEO, Donald Metzger, and its general counsel, Craig Edwards, met with representatives of the DEP about the landfill's status. In a letter dated 31 March 2006, the DEP indicated that: (1) Hanoverian would most likely need to apply for a new permit or obtain reissuance of the existing permit; (2) explained the DEP's concerns with the operation of the landfill; and (3) requested documentation demonstrating that Hanoverian was authorized to do business in Pennsylvania. Edwards responded that the landfill was being transferred to Quaker Alloy, Inc. and that, to his knowledge, Hanoverian was not required to register in order to do business in Pennsylvania.

Fifteen days after Edward's response, the DEP notified the Bankruptcy Trustee in a letter that the solid waste permit had been revoked because of Quaker Alloy, Inc.'s dissolution and abandonment of the permitted facility without providing for final physical closure of its operation. The DEP sent a copy of the letter to Quaker Alloy's address of record, but the letter was returned as undeliverable. A notice of the revocation was published in the 29 July 2006 issue of the Pennsylvania Bulletin (Pennsylvania's equivalent of the Maryland Register).

In June of 2006, Respondent joined Edwards in forming a law firm, Edwards & Litman, whose sole clients were entities in Donald Metzger's group of companies,

3

including Hanoverian. Edwards was the firm's managing partner. He continued to act as general counsel to Hanoverian and Metzger's other companies.

After commencing representation of Hanoverian, Litman filed a notice of appeal with the Pennsylvania Environmental Hearing Board on behalf of "Hanoverian, Inc. d/b/a Quaker Alloy," challenging the DEP's revocation of the solid waste permit. Subsequently, the DEP declared forfeit the bond for the operation of the landfill, submitted by Quaker Alloy prior to its bankruptcy, and commenced an action to collect the bond. Litman responded with a second administrative appeal contesting the bond forfeiture. On 7 December 2006, the Hearing Board issued orders granting motions by the DEP to compel discovery from Hanoverian and consolidating Hanoverian's appeals.

That same day, the DEP issued an Administrative Order charging Hanoverian and Metzger with past and ongoing violations for operating the landfill without obtaining a permit or submitting a bond, failing to implement an approved closure plan, and failing to provide required water sampling and analysis. In response to this initiative, Litman asserted, among other things, that Hanoverian had acquired Quaker Alloy, Inc. from the Bankruptcy Trustee, along with Quaker Alloy's interests in the permit.

On 26 December 2006, Edwards filed amendments to Quaker Alloy's articles of incorporation with the Corporations Bureau of the Pennsylvania Department of State. The amendments provided that Hanoverian's CEO, Metzger, was president, secretary, and treasurer of Quaker Alloy; restructured the capitalization of the corporation; and stated that the corporation would be known as Quaker Alloy, Inc. Hanoverian had applied

4

earlier to the Corporations Bureau for a certificate of authority and registration of the name "Quaker Alloy."

Hanoverian filed a third appeal with the Environmental Hearing Board on 8 January 2007, alleging that the DEP's actions were unlawful under federal bankruptcy law. Hanoverian, through Litman, alleged that the DEP: violated the automatic stay on actions against the assets of the bankrupt entity without permission of the Bankruptcy Court; failed to provide appropriate notice of the revocation of the permit and bond; and, slandered Hanoverian through a press release that harmed allegedly the company's reputation and the reputation of the bankrupt entity. The Environmental Hearing Board consolidated this appeal with the other two pending appeals.

On 19 April 2007, Litman filed a Notice of Removal, on behalf of Hanoverian, Metzger, and Quaker Alloy, Inc., with the U.S. District Court for the Middle District of Pennsylvania, seeking to remove the consolidated administrative proceedings from the Environmental Hearing Board to the District Court. The DEP moved to remand to the Environmental Hearing Board and requested sanctions and attorney's fees against Litman and the parties named in the Notice of Removal. Both sides briefed their positions.[3]

The District Court remanded the case, as requested by the DEP, because the Notice of Removal was untimely.[4] Hanoverian was required to file the Notice of

---

[3] Although Litman submitted his client's brief 10 days late, the brief was considered by the District Court.

[4] The District Court did not reach the issue of whether it would have had jurisdiction if the Notice of Removal had been timely, but suggested that it would not have jurisdiction.

Removal with the District Court within 30 days of the last Notice of Appeal filed with the Environmental Hearing Board. Litman did not file the Notice of Removal until 91 days after the relevant Notice of Appeal.

Litman's conduct of the federal litigation was not well received by Chief Judge Yvette Kane of the District Court. First, Litman argued that the Notice of Removal should not be barred for untimeliness because the DEP did not provide actual notice of the permit revocation or bond forfeiture. The District Court noted that this was inapposite to the issue of timeliness. Further, the District Court stated there was "ample evidence" that Hanoverian had constructive notice, including an unequivocal statement in its 28 August 2006 administrative Notice of Appeal, that it became aware of the revocation through the publication in the Pennsylvania Bulletin. According to a Pennsylvania statute, the DEP's notice in the Bulletin was sufficient under Pennsylvania law.

Litman's other arguments fared no better. According to Litman, the DEP refused to comply with discovery until April 2007, which caused his delay in filing the Notice of Removal. According to Chief Judge Kane, however, this contention lacked even "a shred of support in the record." The District Court found that it was, in fact, Hanoverian that failed to comply with discovery.

Rather than confronting directly in his papers submitted to the District Court the issue of the sanctions sought by the DEP, Litman counter-attacked, accusing the DEP of corruption, mismanagement, and extortion. Chief Judge Kane found no evidence to support these assertions. As a result of her views of Litman's and his firm's handling of the federal litigation, the Chief Judge sanctioned Litman and his law firm, Edwards &

6

Litman, for their representation in the matter. Litman and his firm were ordered to pay $5,555.17 in attorneys' fees to the DEP.

The District Court sanctioned Litman and his firm under FRCP 11 for the contentions and arguments in Hanoverian's pleadings and papers filed in the case. According to Chief Judge Kane's opinion, Litman and the firm committed a number of violations: mounting frivolous legal contentions; making gross misrepresentations of existing law; making factual claims without evidentiary support; using misrepresentations as a litigation tool to increase the cost of litigation for the DEP; not citing to the record in pleadings and papers, thereby requiring circuitous research by the District Court; and, failing to make a reasonable inquiry into the facts and law. Chief Judge Kane noted that there was nothing to suggest that Litman was not acting in an intentional manner and found no mitigating circumstances.

After the District Court remanded the case to the Environmental Hearing Board, Litman resurrected before the Board the same factual and legal claims regarding the DEP that had been discredited previously by the District Court.[5] As a result, the DEP filed a Motion for Sanctions for Litman's misconduct in the administrative matter. In opposition

---

[5] Although Litman stipulated to the operative facts relied on by the Disciplinary Board of the Supreme Court of Pennsylvania, he continues to assert that the Environmental Hearing Board was not bound by the decision of the District Court as to whether the permit was appurtenant to the land or transferable freely (the District Court concluded that it was not). In his submission to this Court, Litman cites a Superior Court of Pennsylvania case which he claims supports his argument that the federal court's decision in this regard was not binding. Because this contention is immaterial to the overall pattern of Litman's frivolous contentions and misrepresentations, it is unnecessary for this Court to opine on parochial Pennsylvania law in this regard.

to the motion for sanctions, Litman continued to assert that: (1) the sale of the landfill approved by the Bankruptcy Court included the transfer of the permit; (2) Hanoverian was the beneficial or equitable owner of the permit; and, (3) Quaker Alloy was the permittee because the bankrupt entity's assets and name had been acquired by Hanoverian. Litman raised also several other frivolous arguments, such as arguing that the DEP's notices regarding the administrative sanctions contentions, addressed to Edwards and the firm Edwards & Litman, at the address shared by Litman, were not effective notice to Litman.

Hanoverian's outstanding appeals before the Environmental Hearing Board were mooted eventually by Hanoverian's re-sale of the landfill, after which the new purchaser sought a reissuance of the permit from the DEP and resolved by a settlement agreement, dated 23 October 2008, the other outstanding disputes with the DEP, including the pending motion for administrative sanctions.

On 18 October 2010, the Pennsylvania Office of Disciplinary Counsel filed a Petition for Discipline against Litman, alleging professional misconduct for pursuing frivolous and unwarranted legal remedies, engaging in a pattern of deliberate misrepresentation, and failing to represent competently his client, Hanoverian, in the federal litigation and administrative proceedings concerning the landfill permit. A Joint Stipulation of Fact and Law was submitted by the parties. Litman acknowledged that his filings before the federal court violated the Pennsylvania Rules of Professional Conduct, but quixotically did not acknowledge that he did not have a basis to resurrect the same claims in the administrative proceedings before the Board.

8

The Disciplinary Board of the Supreme Court of Pennsylvania found that Litman violated Rules 1.1, 3.3(a)(3), and 8.4(c) and (d) of the Pennsylvania Rules of Professional Conduct.[6] The Board found also that Litman's cooperation with the investigation and genuine remorse for his actions were mitigating factors. It recommended that Litman be subject to a Public Censure before the Supreme Court of Pennsylvania. The Pennsylvania Supreme Court summarized Litman's violations of its Rules of Professional Conduct and censured him before the Court on 27 November 2012.

The Attorney Grievance Commission of Maryland, through Bar Counsel, contends that Litman should be disbarred in Maryland for violating Rules 1.1, 1.16(a)(1), 3.1,

---

[6] The text of the relevant Pennsylvania Rules are as follows:

Rule 1.1
  A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Rule 3.3(a)(3)
  A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence before a tribunal or in an ancillary proceeding conducted pursuant to a tribunal's adjudicative authority, such as a deposition, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

Rule 8.4(c) and (d)
  It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . [or] (d) engage in conduct that is prejudicial to the administration of justice.

9

3.3(a), and 8.4(a), (c) and (d) of the Maryland Lawyers' Rules of Professional Conduct

("MLRPC") in his representation of Hanoverian.[7] Litman does not deny Bar Counsel's

allegations of misconduct, but rather argues that disbarment is not the appropriate

[7] The analogous Maryland Rules to the respective Pennsylvania Rules are:

MLRPC 1.1
> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

MLRPC 1.16(a)(1)
> Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law.

MLRPC 3.1
> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous. . . .

MLRPC 3.3(a)
> A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

MLRPC 8.4
> It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice; . . . .

sanction and highlights the mitigating factors found by the Disciplinary Board of the Supreme Court of Pennsylvania. He pleads also that the consequences of the Pennsylvania public censure have been sanction enough for his misconduct.

The only factual disagreement pointed to by Litman is whether his misrepresentations were to further a scheme. It is obvious to us, however, that Litman's intentional misrepresentations were to further his client's interests and thus were placed before tribunals to achieve a particular goal for the client. Further, Litman does not deny that his tactics were calculated to delay the then pending proceedings in Pennsylvania.

## II. Discussion

Although this Court is prone to imposing a corresponding sanction to that levied by the originating jurisdiction, that does not mean we forego an assessment of the propriety of the other jurisdiction's sanction. *Atty. Griev. Comm'n v. Whitehead*, 390 Md. 663, 668–69, 890 A.2d 751, 754 (2006). When our cases indicate clearly we would apply a different sanction had the misconduct occurred in Maryland, we need not issue corresponding discipline, even if such exists under Maryland's sanctions hierarchy. *Kourtesis*, 437 Md. at 447, 87 A.3d at 1237.

Our obligation to assess the sanction imposed by another jurisdiction stems from this Court's duty "'to insist upon the maintenance of the integrity of the bar. . . .'" *Atty. Griev. Comm'n v. Myers*, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994) (quoting *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 549, 318 A.2d 811, 814 (1974)). "The primary purpose of attorney discipline is the protection of the public, not the punishment of the attorney." *Whitehead*, 390 Md. at 674, 890 A.2d at 757. Consistent sanctions

11

against Maryland-licensed attorneys for like misconduct promotes general and specific deterrence by indicating the standards members of the bar must adhere to and the consequences for failing to do so. *See Kourtesis*, 437 Md. at 447, 87 A.3d at 1237; *Whitehead*, 390 Md. at 675, 890 A.2d at 758; *Atty. Griev. Comm'n v. Sperling*, 380 Md. 180, 190-91, 844 A.2d 397, 404 (2004).

The parties argue that this Court should impose different discipline here than did the Supreme Court of Pennsylvania.[8] Bar Counsel seeks disbarment of Respondent because it believes Litman's conduct warrants substantially different discipline in Maryland under certain of our like cases. Respondent, in turn, argues that no further discipline is required because the public censure of the Supreme Court of Pennsylvania has shamed and admonished him adequately and its consequences resulted in limiting adversely his practice and employment options since then. According to Litman's view, additional discipline in Maryland would be, in effect, piling-on.

A.      *The Appropriate Sanction in Maryland is an Indefinite Suspension*

Respondent misrepresented intentionally facts and the law to both judicial and administrative tribunals, demonstrated a lack of diligent research, failed to represent

---

[8] There is no exact Maryland analog to the public censure sanction issued by the Supreme Court of Pennsylvania. A public censure under Pennsylvania's scheme involves the disciplined attorney appearing personally before the Supreme Court and being reprimanded verbally on the public record. According to Rule 204 of the Pennsylvania Rules of Disciplinary Enforcement, public censure is a sanction less severe than a suspension, but more severe than probation or a public reprimand. Compared to Maryland's sanctions hierarchy, a public censure would appear to be more severe than a public reprimand, but less severe than a suspension, as contemplated by Maryland Rule 16-721.

competently his client, and employed frivolous arguments and filings in an effort to interfere with the administration of justice. This constitutes a violation of MLRPC 1.1, 3.3(a), and 8.4(c) and (d). Even if, as Litman claims, his representation of Hanoverian was an aberration in an otherwise competent and ethical legal career to that point, he engaged in the same course of conduct twice in his representation of Hanoverian: once before the federal court and again before the Pennsylvania Environmental Hearing Board. Further, Litman was made aware of the error of his way by the DEP, but took no measures to remedy the situation. He either made deliberately the misrepresentations at issue or blinded himself willfully to the falsity of his contentions.

Litman's assertion that he relied on information supplied by his client and law firm partner do not reduce his culpability. As Respondent notes, he had been a member of our Bar for over twenty-five years at the time of the misconduct in question. His experience makes even more troubling his failure to verify the so-called factual statements and legal arguments upon which he relied, especially after the DEP notified him of their lack of basis. Significant experience in the practice of law is an aggravating factor in these circumstances. *Atty. Griev. Comm'n v. Coppola*, 419 Md. 370, 407, 19 A.3d 431, 453 (2011) (citing *Whitehead*, 405 Md. at 263, 950 A.2d at 812; *Atty. Griev. Comm'n v. Mininsohn*, 380 Md. 536, 576, 846 A.2d 353, 376 (2004); *Atty. Griev. Comm'n v. Garfield*, 369 Md. 85, 106, 797 A.2d 757, 769 (2002); *Atty. Griev. Comm'n v. Harris*, 371 Md. 510, 556, 810 A.2d 457, 485 (2002).

*Attorney Grievance Commission v. Sperling*, 432 Md. 471, 69 A.3d 478 (2013), is informative in the instant case. In *Sperling*, an attorney sought to reopen his client's

13

previously dismissed case by misrepresenting: facts about his pre-dismissal contact with the clerk's office; his present knowledge of the location of the defendant upon who his client had not been able to serve process previously; and, the accuracy of the statements in the plaintiff's motions to re-open the case. *Id.*, 432 Md. at 479-88, 69 A.3d at 482-88. The attorney failed also to represent diligently his client or maintain adequate client communications. *Id.*, 432 Md. at 491, 69 A.3d at 489. Although the attorney undertook representation of the case two months after being sworn-in to this Bar, the misrepresentations to the tribunal were made a decade later. *Id.*, 432 Md. at 479-87, 69 A.3d at 482-87. We concluded that this misconduct warranted indefinite suspension.

As we noted in *Sperling*, "[w]hile the sanction for dishonest conduct is generally disbarment, 'we have not, however, always found disbarment to be the appropriate sanction when there is misrepresentation involved, especially when misappropriation of money is not involved.'" 432 Md. at 497, 69 A.3d at 493 (quoting *Atty. Griev. Comm'n v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 629 (2002)). Indefinite suspension, as the base sanction, is also appropriate in the present case. *Id.*, 432 Md. at 498, 69 A.3d at 494.

Like the attorney in *Sperling*, Litman misrepresented facts to tribunals in an attempt to further his client's goals and failed to represent competently his client. In addition, Litman advanced frivolous and unfounded legal arguments. On the mitigation ledger, Litman showed remorse over his actions and acknowledged the seriousness of his misconduct, unlike the attorney in *Sperling*. Yet, this mitigation is balanced against Litman's greater experience and the fact that he continued to advance the same faulty claims after he was sanctioned by the District Court for making them.

14

Although Bar Counsel points to decisions of this Court in support of its recommendation for disbarment, these cases seem to us distinguishable on the facts from the present case. In *Attorney Grievance Commission v. Fader*, the attorney not only forged a doctor's note in order to obtain a court postponement, but also managed inadequately his attorney trust account and had a prior disciplinary history. 431 Md. 395, 437, 66 A.3d 18, 43 (2013). In *Attorney Grievance Commission v. McClain*, the disbarred attorney: filed several motions, without legal basis, as a delay tactic; reported a "sham" settlement; misrepresented the statements of the trial judge to the Court of Special Appeals; and, had been suspended previously from the practice of law. 406 Md. 1, 6-8, 18, 956 A.2d 135, 138-140, 145 (2008). In *Attorney Grievance Commission v. Siskind*, there were no mitigating factors present. *See*, 401 Md. 41, 75, 930 A.2d 328, 348 (2007). In *Attorney Grievance Commission v. Goodman*, the disbarred attorney impersonated another attorney for a period of two months and exhibited selfish motives, in addition to misrepresenting facts to a tribunal. 381 Md. 480, 497, 850 A.2d 1157, 1167 (2004). Finally, in *Attorney Grievance Commission v. Myers*, the disbarred attorney had been suspended previously by this Court for earlier dishonest conduct. 333 Md. 440, 448, 635 A.2d 1315, 1318 (1994).

Disbarment for misleading intentionally a tribunal may be the correct sanction in many situations. In some cases, as it is here, an indefinite suspension is more appropriate. Even a finite suspension may be appropriate in other cases. *See, e.g., Atty. Griev. Comm'n v. Gordon*, 413 Md. 46, 64, 991 A.2d 51, 61 (2010) (suspending attorney for forty-five days for violating MRPC 3.3(a)(1), 3.3(a)(4), and 8.4(c)); *Atty. Griev. Comm'n v. Tanko*,

408 Md. 404, 426, 969 A.2d 1010, 1023-24 (2009) (suspending attorney for sixty days for a violating rule 3.3 (a)). This Court "must examine the facts, circumstances, and mitigation involved in each case and not take a procrustean approach." *Lane*, 367 Md. at 646, 790 A.2d at 628.

### 1. Litman May Apply for Readmission No Sooner Than Six Months After the Effective Date of His Indefinite Suspension

When our cases give such guidance, it is appropriate to state a minimum amount of time that an attorney who has been suspended indefinitely must wait before re-applying for the Bar. Although an indefinite suspension with no minimum "sit-out time" may be considered less onerous because the suspended attorney may re-apply immediately, providing some insight as to when we might be willing to consider an application for reinstatement may prevent multiple frustrating attempts. *Atty Griev. Comm'n v. Sweitzer*, 395 Md. 586, 606-7, 911 A.2d 440, 452 (2006) (Harrell, J., dissenting).

When we have set a minimum duration before an application for reinstatement might be considered, after imposing an indefinite suspension resulting from violations of MLRPC 8.4(c), we require typically at least six months. *See, e.g.*, *Atty. Griev. Comm'n v. Robaton*, 411 Md. 415, 431, 983 A.2d 467, 476-77 (2009) (imposing an indefinite suspension with right to re-apply after six months for violations of MLRPC 1.1, 1.3, 3.3(a), 5.5(a),and  8.4(c) and (d)); *Atty. Griev. Comm'n v. Granger*, 374 Md. 438, 462, 823 A.2d 611, 626 (2003) (imposing an indefinite suspension with right to re-apply after six months for violations of MLRPC 8.1, and 8.4(c) and (d)); *Atty. Griev. Comm'n v.*

16

*Cohen*, 361 Md. 161, 179, 760 A.2d 706, 716 (2000) (imposing an indefinite suspension with a right to apply after six months for violations of MLRPC 1.1, 1.3, 1.4, 8.1(a), and 8.4(c) and (d)). *But see Atty Griev. Comm'n v. Lawson*, 401 Md. 536, 586, 933 A.2d 842, 871 (2007) (imposing an indefinite suspension with the right to re-apply after one year for violating MLRPC 1.4(a), 1.4, 1.15, 1.16(d), 8.4(c) and (d), and Maryland rules on client trust accounts); *Atty. Griev. Comm'n v. Brown*, 353 Md. 271, 296, 725 A.2d 1069, 1081 (1999) (imposing an indefinite suspension with right to re-apply after one year for violating MLRPC 1.3, 1.4, 3.1, 3.3(a)(1), 5.5(b), 7.1, 7.5(a) and (b), 8.1(b), and 8.4 (c) and (d)); *Atty. Griev. Comm'n v. Middleton*, 360 Md. 34, 50, 756 A.2d 565, 574 (2000) (imposing and indefinite suspension with the right to re-apply after three years for violations of MLRPC 1.1, 1.3, 3.3(a)(1), 8.1(b), and 8.4(c) and (d)). We have applied a minimum sit-out period of less than six months, where an indefinite suspension is the base sanction as a result of misrepresentations, only when the attorney did not make knowingly the false statements. *See Atty. Griev. Comm'n v. Khandpur*, 421 Md. 1, 26, 25 A.3d 165, 180 (2011) (accepting the findings of the hearing court that attorney's false statements were the result of laziness or ineptitude, but were not deceitful, and imposing an indefinite suspension with the right to re-apply after sixty days for violating MLRPC 1.3, 1.15(a) and (c), 8.1(b), and 8.4(d)); *Atty. Griev. Comm'n v. Mooney*, 359 Md. 56, 98, 753 A.2d 17, 39 (2000) (not accepting the hearing court's finding that attorney violated MLRPC 8.4(c) and imposing an indefinite suspension with the right to re-apply after ninety days for violating MLRPC 1.1, 1.3, 1.4, 5.1, 5.3, and 8.4 (a) and (d)).

17

In the instant case, Respondent admits that he made his misrepresentations knowingly. The managing partner of Litman's firm and Litman's client may have induced or pressured Litman into making his misrepresentations to the tribunals, but Litman was still aware (or should have been aware) that they were misrepresentations nonetheless. Many attorneys who violate their ethical obligations do so because of perceived external pressure. Litman may apply for reinstatement in Maryland no sooner than six months after the effective date of his indefinite suspension.

B.      *Suspending Litman Will Not Cause Grave Injustice*

Litman argues that any Maryland sanction will result in grave injustice to him because potential clients or employers might view the sanction as discipline for separate misconduct occurring in Maryland. Moreover, the Pennsylvania public censure disciplined him adequately. Therefore, Litman argues, this Court should not implement even corresponding reciprocal discipline according to Maryland Rule 16-773(e)(3).[9] We disagree.

Although Respondent has expressed remorse and acknowledged the severity of his misconduct (from the inception of the Pennsylvania disciplinary process) and may be unlikely to engage in similar misconduct going forward, reciprocal discipline according to our cases serves also purposes of general deterrence. Signaling to the Bar that conduct

---

[9] Maryland Rule 16-773(e)(3) states: "[r]eciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that the imposition of corresponding discipline would result in grave injustice."

similar to Litman's will not be tolerated in Maryland by attorneys admitted here is essential to maintaining the integrity of our Bar.

The negative economic and social consequences faced by individual attorneys subject to discipline are unfortunate, yet foreseeable, side effects of the necessary deterrence of misconduct that respondents and this Court must accept in order to maintain the integrity of the Bar and protect the public. *Kourtesis*, 437 Md. at 454, 87 A.3d at 1241; *see Whitehead*, 390 Md. at 675, 890 A.2d at 758; *Sperling*, 380 Md. at 191, 844 A.2d at 404. Economic side effects from otherwise appropriate discipline is not the kind of grave injustice contemplated by Rule 16-773(e)(3). *Kourtesis*, 437 Md. at 454, 87 A.3d at 1241.

## III.    Conclusion

In conclusion, we hold that Donald Saunders Litman's conduct representing Hanoverian in its federal court and administrative litigation with the Pennsylvania Department of Environmental Protection violated MLRPC 1.1, 1.16(a)(1), 3.1, 3.3(a), and 8.4(a), (c) and (d). There is no exact Maryland analog to the discipline imposed by the Supreme Court of Pennsylvania. The misconduct, had it occurred in Maryland, warrants clearly indefinite suspension. Respondent may apply, however, for reinstatement in Maryland no sooner than six months from the effective date of his suspension.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-**

**761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST DONALD SAUNDERS LITMAN.**