53 A.3d 332

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

David L. ZEIGER.

Misc. Docket AG No. 28, Sept. Term, 2007.

Court of Appeals of Maryland.

Sept. 24, 2012.

Raymund A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel (Attorney Grievance Commission of Maryland)), for Petitioner.

Harvey Greenberg, Esq., for Respondent.

Argued before BELL, C.J., RAKER *, HARRELL, BATTAGLIA, GREENE, MURPHY **, CATHELL (Retired, Specially Assigned), JJ.

PER CURIAM.

This case raises the question of whether an attorney violates the rules of professional conduct when, acting on his own behalf in another state, he seeks appointment as administrator of his late father's estate and submits incomplete and inaccurate forms to induce another family member to come forward with the father's most recent will. The Attorney Grievance Commission (the "Commission"), acting through Bar Counsel, charged David L. Zeiger with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice) based on a complaint by Barbara Kohl, Mr. Zeiger's stepmother.[1] The alleged violations all concern Mr. Zeiger's decision to open a probate estate for his deceased father in West Virginia in order to obligate his stepmother—herself an attorney licensed in Maryland—to produce his father's will.

---

\* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

\*\* Murphy, J., now retired, participated in the hearing and conference of this case while an active judge, but did not participate in the decision and adoption of this opinion.

1. Although the hearing judge's findings of fact refer to Barbara Kohl as "Barbara Kohl Zeiger," she is listed as Barbara Kohl in Maryland Client Protection Fund attorney database and otherwise appears to have used the last name Kohl in the decade following her husband's death. For the sake of clarity, we will refer to her simply as "Barbara Kohl."

Pursuant to Maryland Rules 16–752(a) and 16–757, we referred the matter to Judge Lynn K. Stewart of the Circuit Court for Baltimore City to conduct a hearing and provide findings of fact and recommended conclusions of law. Prior to the hearing before Judge Stewart, Mr. Zeiger filed a motion to dismiss the case, arguing that the Commission was estopped from pursuing disciplinary charges against him as a result of the Peer Review Panel's recommendation to the Commission. In response, the Commission filed a motion to strike all references to the Peer Review Panel proceedings. The hearing judge held that the Commission was not estopped from pursuing the charges against Mr. Zeiger and granted the motion to strike references to the Peer Review Panel proceedings.

The record developed during a two-day hearing revealed a virtual soap opera of alleged infidelity, divorce, estrangement, lawsuits, murder accusations, and other high drama within the Zeiger family, of which Ms. Kohl's attorney grievance complaint against Mr. Zeiger was only the latest chapter. However, there appeared to be little dispute as to the material facts. Based on those facts, the hearing judge concluded that Mr. Zeiger had violated MLRPC 8.4(c) and 8.4(d).

Mr. Zeiger filed exceptions to certain details in the findings of fact and more extensive exceptions to the conclusions of law. As set forth in greater detail below, we sustain the key exceptions that pertain to the merits of the alleged violations. Although the record indicates that Mr. Zeiger may have failed to carry out fully the duties of an administrator of the estate that he opened, it does not support the conclusion that he intended to mislead or defraud or that his failings resulted in prejudice to Ms. Kohl or the administration of justice. Therefore, the charges against Mr. Zeiger shall be dismissed.

## Background [2]

*The Zeigers*

---

**2.** This section is based on the findings of fact made by the hearing judge, and other facts in the record undisputed by the parties. In his

David Zeiger is the son of Leon Zeiger,[3] who was a successful night club operator and real-estate developer throughout the Mid–Atlantic United States. David, who became a member of the Maryland Bar in June 1986, worked for his father for more than 25 years in various capacities until 1991. At that time, Leon replaced David as operating manager of a real estate development firm with Ms. Kohl.[4] The relationship between father and son further deteriorated in 1995 when, after more than 50 years of marriage, Leon divorced his wife—David's mother—and married Ms. Kohl, who was more than 30 years his junior. David assisted his mother in the long and contentious divorce case, Ms. Kohl filed a defamation action against David, and Leon became estranged from his children.

*The Zeiger Will*

After his remarriage, Leon resided with Ms. Kohl in Hampshire County, West Virginia, and revised his plans for his estate. (David had possession of a 1952 version of his father's will, which left the entirety of Leon's estate to his then-wife, David's mother.) In September 1999, Ms. Kohl, in a letter to Leon's sister, indicated that Leon had authorized a new will that provided for his children; the contents of that letter were shared with David and his sister by their aunt. Unbeknownst to them, however, in June of the following year Leon established an *inter vivos* trust, the "Leon B. Zeiger Trust" (the "Trust")—of which Ms. Kohl was the sole beneficiary. He also transferred property from himself to Yellow Spring LLC, an entity he owned jointly with Ms. Kohl. In December 2001, Leon executed a will that named Ms. Kohl as the executor of his estate and the Trust as the sole beneficiary. The will

---

exceptions, Mr. Zeiger has noted two specific instances where dates in the hearing judge's factual findings were plainly contradicted by the record and thus clearly erroneous. Those dates have been corrected.

3. To distinguish one Mr. Zeiger from the other, we will refer to them by their first names in this section.

4. Two years later, in 1993, Ms. Kohl graduated from law school and shortly thereafter became a member of the Maryland Bar.

stated that "I have intentionally excluded my children as beneficiaries under this will."

*Leon Zeiger's Death and the Opening of an Estate*

Leon Zeiger died in June 2002, leading to various squabbles between Ms. Kohl and the Zeiger children regarding his obituary, plans for an autopsy, and the funeral.[5] Ms. Kohl did not file the will, and, according to David's aunt, had told her that, in fact, no will existed. Accordingly, David and his sister were unsure of the recent will's existence. To determine whether such a will existed—and, if so, obtain a copy—the two hired an attorney, Louis Fireison, who had previously represented David's mother in her divorce. Mr. Fireison wrote Ms. Kohl seeking information about the suspected will, but Ms. Kohl did not respond. Unable to locate a will, Mr. Fireison advised David to open an estate for his father in Hampshire County, which, they believed, would obligate anyone with a will (in particular, Ms. Kohl) to produce it. In October 2003, David and his sister applied to the Hampshire County Commission[6] for appointment as co-administrators of their father's estate. A portion of the appointment form inquired whether the decedent had a will and had boxes to be marked "yes" or "no." David checked neither one and left that portion of the form blank.

*Appraisement of the Estate*

David and his sister also filed a joint "Appraisement of the Estate" which he signed under oath as a fiduciary.[7] David

---

5. Leon's obituary in *The Washington Post* omitted any mention of his children, and a correction was later published. David requested an autopsy of his father's body, but Ms. Kohl instructed the hospital not to perform one. At the funeral, the children were told not to approach the coffin.

6. It appears from the record that the Hampshire County Commission functions as a probate court.

7. David testified at the hearing in this case that he was under the mistaken impression that he was required to complete the appraisement simultaneously with the request for appointment. Mr. Fireison testified that, based on information Mr. Fireison had received from

listed five pieces of real property ranging from $50,000 to $3 million and personal property worth $20,000. In the appraisement he stated that he had made a "diligent effort to ascertain the taxable property" of the estate and attested to his belief that it contained "the true and lawful appraisement of all real estate and probate property of the estate." In fact, David had made no formal appraisal of the estate property, and his assessments of the property turned out to be inaccurate. He testified at the hearing in this case that he determined the estimated values of the property from information he had learned through his parents' divorce proceedings, personal investigation after his father's death, and his previous work for his father.

*Subsequent Actions and the Filing of the 2001 Zeiger Will*

After his appointment, David did little to fulfill the duties of an administrator of the estate. He did not notify Ms. Kohl that he had opened the estate or that he was its co-administrator, although West Virginia law required him to do so within 90 days. He did not complete an accounting or inventory of the estate. He did not file interim accounts or tax returns, nor did he pay applicable estate taxes. Neither he nor his sister made any attempt to take control of the estate.

David did, however, initiate steps to determine whether a will existed. In October 2004, Mr. Fireison served a notice of deposition on Ms. Kohl's accountant. The accountant then informed Ms. Kohl that David had opened an estate and had been appointed as administrator; Ms. Kohl then filed Leon's 2001 will with the Hampshire County Commission. Mr. Firei-

---

officials in West Virginia, he had told David that he had to personally file the form including the appraisement, at least partially completed, together with a bond in West Virginia. Shortly after opening the estate, David wrote to Mr. Fireison that he was uncomfortable and dissatisfied with his answers on the appraisement, but believed that he had to submit the appraisement in order to request the appointment. In fact, the appraisement could have been filed up to 90 days after he was appointed as administrator, which would have allowed him an opportunity to more fully investigate the assets of the estate.

son contacted Ms. Kohl's attorney and asked to privately review the Trust agreement, but Ms. Kohl refused.

In August 2005, Ms. Kohl filed a petition to remove David and his sister as co-administrators, and sought to have herself appointed in their place. At an October 2005 hearing in front of a Fiduciary Commissioner in Hampshire County, David and his sister were removed as co-administrators of the estate and replaced by Ms. Kohl. Ms. Kohl indicated that the only probate property in Leon's estate was approximately $715 in an overlooked bank account.

Based on these facts, the hearing judge concluded that David had violated 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice).

### Discussion

We review the hearing judge's conclusions of law *de novo* pursuant to Maryland Rule 16–759(b)(1), in light of the exceptions filed by Mr. Zeiger.

*Motion to Dismiss Based on Peer Review Panel Recommendation*

Throughout the proceedings against him, Mr. Zeiger has argued that the Peer Review Panel's recommendation to the Commission estopped the Commission from pursuing disciplinary action because the Peer Review Panel did not recommend such action.[8] He asserts that due process precludes the Commission from pursuing disciplinary charges after a "final decision" by the Peer Review Panel that such charges should be dismissed.

■ Mr. Zeiger misapprehends the nature of the peer review process. As the rules make clear, and we have repeatedly affirmed, Peer Review Panel recommendations are

---

8. When a Statement of Charges is filed with the Commission, a Peer Review Panel is appointed to consider the charges and make recommendations to the Commission as to disposition of the case. Maryland Rule 16–743.

*not* to be characterized as a final decision on the merits. "The peer review process is not intended to be an adversarial one and it is not the function of the Peer Review Panels to hold evidentiary hearings, adjudicate facts, or write full opinions or reports." Maryland Rule 16–743(a). The Panels have "no more than a recommendatory function, one that is not binding and certainly not dispositive." *Attorney Grievance Comm'n v. Kinnane,* 390 Md. 324, 335, 888 A.2d 1178 (2005). "The Peer Review Panel proceeding is an informal, nonadversarial meeting designed to allow Bar Counsel, the respondent attorney, the complainant, and other invited persons to meet and discuss the issues presented in the complaint in an environment similar to a mediation process[.]" *Attorney Grievance Comm'n v. Lee,* 387 Md. 89, 108, 874 A.2d 897 (2005).

■ This informal, non-binding "mediation process" where no facts are adjudicated cannot be grounds for the estoppel of subsequent formal charges against the attorney. ·Mr. Zeiger argues that the Commission does not have procedural authority to file a Petition for Disciplinary or Remedial Action if the Peer Review Panel recommends that the complaint be dismissed. But Maryland Rule 16–743(f)(1) states—without any qualification—that, following the Panel's recommendation, the Commission may "direct Bar Counsel to file a Petition for Disciplinary or Remedial Action." The Commission has the power to "exercise the authority granted in the Rules in this Chapter with respect to the approval or disapproval of (A) the dismissal of a complaint or Statement of Charges, (B) the termination of a complaint with or without a warning, ... or (E) the filing of a Petition for Disciplinary or Remedial Action." Maryland Rule 16–711(h)(9). A Petition for Disciplinary or Remedial Action is filed "[u]pon approval *or direction* of the Commission[.]" Maryland Rule 16–751(a) (emphasis added). These rules make it clear that the Commission may elect to follow the Panel's recommendation or not, and thus may direct Bar Counsel to file a Petition for Disciplinary or Remedial Action regardless of the Panel's recommendation.

Mr. Zeiger contends that the Commission may not make an "arbitrary" decision to ignore the recommendation and file charges, but there is nothing in the rules or our case law requiring the Commission to provide any justification whatsoever for departing from a Panel recommendation. Mr. Zeiger's objection to the disciplinary action on the basis of estoppel is without merit.[9]

*Alleged Violations of MLRPC 8.4(c)*

MLRPC 8.4(c) states that a lawyer may not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The hearing judge concluded that Mr. Zeiger had, by failing to complete the portion of the appointment form regarding the decedent's will, misrepresented to the Hampshire County Commission that his father had died intestate. She noted that Mr. Zeiger was, at the very least, aware of—and, indeed, had in his possession—his father's 1952 will, and had been told that there was a newer one. Therefore, she concluded, he should have indicated on the form that a will existed (rather than leaving the question blank), and his failure to do so violated MLRPC 8.4(c).

As the commentary to the MLRPC makes clear, misrepresentations can occur by "omissions that are the equivalent of affirmative false statements." MLRPC 4.1 cmt. 1. However, we cannot say that Mr. Zeiger's failure to answer either "yes" or "no" on the appointment form regarding the existence of a will was meant to convey, or did convey, that no will in fact existed. In this case, the failure to answer

---

**9.** Mr. Zeiger also contests the hearing judge's decision to grant the Commission's motion to strike references in his pleadings to the Peer Review Panel proceedings. Peer Review proceedings and the records of those proceedings are confidential. Maryland Rule 16–723(a), (b)(2). Mr. Zeiger contends that he was permitted to waive this confidentiality. He directs our attention to Maryland Rule 16–732(f)(1), which permits disclosures of such information by the Commission or Bar Counsel with the written waiver of a respondent attorney. He argues that a respondent attorney himself necessarily should be able to make a similar disclosure if willing to waive confidentiality. Given our disposition of the merits of this case, we do not address this issue.

questions on the form was not equivalent to an affirmative false statement.

It is true that Mr. Zeiger was in possession of a 1952 will, which had been drafted when he was eight years old and which left the entire estate to his deceased mother, but he had good reason to doubt its continued validity. His parents had divorced, his father had remarried, and his mother had died. Further, he had previously been told by his aunt that he and his sister had been included in a more recent will, which could not have been the 1952 will.[10]  Nonetheless, he could not be sure of the purported recent will's existence either, because Ms. Kohl had subsequently indicated that no will existed. Indeed, his purpose in opening the estate was to confirm and force disclosure of the rumored recent will.

While it would have been preferable for Mr. Zeiger to have made some mention of the 1952 will on the forms he submitted in West Virginia, there is no clear and convincing evidence in the record that he intentionally chose to mislead anyone. A misrepresentation is made when the attorney "knows the statement is false," and cannot be "the product of mistake, misunderstanding, or inadvertence." *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 68–69, 930 A.2d 328 (2007). Therefore, we cannot conclude that Mr. Zeiger violated MLRPC 8.4(c) on that basis.

The hearing judge also found that Mr. Zeiger violated MLRPC 8.4(c) by giving an inaccurate account of, and appraisals for, his father's property. On the form containing the appraisement, Mr. Zeiger attested that he had made "diligent" efforts to ascertain the value of taxable property in the estate, and that the appraisals were "true."  In fact, Mr. Zeiger had not fully investigated title to the properties he listed or had the properties appraised in any formal manner; the entries listed on the form were educated guesses about his father's property and their worth. Mr. Zeiger argues that, because he

---

**10.** The 1952 will made no mention of the children, and, indeed, was drafted before Mr. Zeiger's sister had been born.

was focused on uncovering a valid will, and not on the administration of the estate, the inaccuracies on the form were not intended to mislead, but were, at worst, negligent. He apparently believed that he was required to complete the appraisement simultaneously with the appointment application and asserted that, had he realized it was not due until 90 days after appointment, he would have more fully investigated the estate and included more accurate estimates on the form.

"It is well settled that this Court will not find a violation of [MLRPC] 8.4(c) when the attorney's misconduct is the product of 'negligent rather than intentional misconduct.'" *Attorney Grievance Comm'n v. DiCicco,* 369 Md. 662, 684, 802 A.2d 1014 (2002) (quoting *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446 (1997)). It appears that Mr. Zeiger's statements about the properties were at least based on his personal knowledge and experience.[11] Without clear and convincing evidence that Mr. Zeiger intended to mislead the Commission and other interested parties with his estimated property values, we cannot conclude that he committed "intentional misconduct." Therefore, we conclude that Mr. Zeiger did not violate MLRPC 8.4(c) to the extent the property information he listed in the appraisement was inaccurate.

Lastly, the hearing judge found that Mr. Zeiger violated MLRPC 8.4(c) by failing to fulfill his duties as co-administrator of the estate. It is undisputed that he did not carry out all of the various legal obligations of an estate administrator. For example, Mr. Zeiger admits that, under West Virginia law, he was required to send notice to Ms. Kohl within 90 days of the opening of the estate. He explains his failure to do so as a result of his ignorance of West Virginia law, and not as part of any scheme to keep Ms. Kohl ignorant of the opening of the estate. Indeed, it would have been counterproductive to Mr. Zeiger's purpose to hide his actions from Ms. Kohl: in

---

11. Of course, a grossly inaccurate accounting of the property and its value would have been wholly inadequate had he continued as administrator of the estate.

order to induce Ms. Kohl to produce his father's will, it was critical that she know the estate had been opened.

It is also true that Mr. Zeiger did not take control of the assets of, or file an accounting or tax return for, the estate. It may well be premature to take some of these steps without first determining the existence of a will or otherwise investigating the estate. The evidence in the record indicates that, after opening the estate, Mr. Zeiger sought production of a valid will—proving his suspicions correct, Ms. Kohl was in possession of one—and other accounting records related to the estate. Until this was completed it would be difficult for Mr. Zeiger to provide an accurate accounting of the assets in the estate. The facts of the case simply do not amount to clear and convincing evidence that Mr. Zeiger engaged in dishonest, fraudulent, or deceitful conduct, or otherwise misrepresented his actions or intentions, whatever his failings as co-administrator. On this record, we cannot conclude that he violated MLRPC 8.4(c).

*Alleged Violation of MLRPC 8.4(d)*

MLRPC 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The hearing judge concluded that, because Mr. Zeiger did not administer the estate that he had been appointed to administer, he had misused the probate legal process and therefore violated MLRPC 8.4(d).[12] We disagree.

■ It is undisputed that, under West Virginia law, Mr. Zeiger had a right to open an estate for his father when no estate had been opened and no will had been produced. It was legally permissible for Mr. Zeiger to open the estate for the purpose of forcing Ms. Kohl to divulge the will she had in her possession and had, perhaps in violation of West Virginia law, neglected to file within 30 days of her husband's death.

---

12. The hearing judge also found that Mr. Zeiger's misrepresentations in obtaining the appointment as administrator violated MLRPC 8.4(d). As explained above, we conclude that Mr. Zeiger did not make intentional misrepresentations in obtaining the appointment.

Mr. Zeiger's opening of the estate, and his intentions in doing so, were not an improper use of the probate process.

█ It cannot be known whether Mr. Zeiger would have ever actually undertaken his duties as co-administrator of the estate had a valid will not been produced. Certainly, Mr. Zeiger's failure to inform Ms. Kohl of his appointment and inaction as to other administrative tasks resulted in a delay in the ultimate resolution of the estate. However, "[a] delay alone will unlikely be sufficient to show prejudice, absent any actual and substantial harm flowing from the delay." *Attorney Grievance Comm'n v. Rand*, 411 Md. 83, 100, 981 A.2d 1234 (2009).

Once she learned that Mr. Zeiger had been appointed administrator of the estate, Ms. Kohl filed the will in her possession. At that point, she replaced Mr. Zeiger as administrator and the estate was fully resolved. There is no indication in the record that Mr. Zeiger's actions resulted in any real harm to Ms. Kohl, his father's estate, or to the government and citizens of Hampshire County. Without a showing of "any actual and substantial harm," we decline to find that Mr. Zeiger's delay in fulfilling his duties as administrator constituted conduct prejudicial to the administration of justice. Therefore, we conclude that he did not violate MLRPC 8.4(d).

### Conclusion

While we do not endorse the legal gamesmanship by which Mr. Zeiger induced Ms. Kohl to produce her late husband's will, we cannot conclude that he had the intent required for a violation of MLRPC 8.4(c) or caused the level of harm required for a violation of MLRPC 8.4(d). We therefore grant Mr. Zeiger's exceptions to the hearing judge's conclusions concerning the merits of the charges and dismiss the Commission's Petition.

PETITION FOR DISCIPLINARY ACTION AGAINST DAVID L. ZEIGER, ESQ. DISMISSED; COSTS TO BE PAID BY THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.